IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID L. DOWNING, PsyD, ABPP, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Cause No. 1:18-cv-244 |
| UNIVERSITY OF INDIANAPOLIS, | ) ) ) |
| Defendant. | ) |

**COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY**

Plaintiff David L. Downing, PsyD, ABPP, by counsel, for his Complaint for Damages and Demand for Trial by Jury, states as follows:

**I. INTRODUCTION**

1. This is an action brought by DAVID L. DOWNING, PsyD, ABPP ("Dr. Downing") against Defendant UNIVERSITY OF INDIANAPOLIS ("University of Indianapolis"), between which parties there is an employment relationship. The University of Indianapolis violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), as amended by ADA Amendments Act of 2008 ("ADAAA"), by failing to engage in the interactive process, demoting Dr. Downing, unilaterally placing Dr. Downing on involuntary leave because of his disability, placing him on a remediation plan, and requiring him to teach courses he had never taught before with very little notice. The University of Indianapolis also violated Dr. Downing's rights by retaliating against Dr. Downing after he invoked his federally protected rights under the ADA in violation of 42 U.S.C. § 12203(a). The University of Indianapolis acted deliberately and violated the civil rights of Dr. Downing on the basis of his disability.

## II.  EEOC COMPLIANCE

2. Dr. Downing exhausted all necessary administrative proceedings by timely filing a Charge of Discrimination on the basis of disability with the U.S. Equal Employment Opportunity Commission ("EEOC").

3. Dr. Downing filed his Charge of Discrimination with the EEOC on or about February 10, 2017.  A copy of Dr. Downing's Charge is attached hereto and marked as Exhibit 1.

4. Dr. Downing's Charge was timely filed in compliance with 42 U.S.C. § 12117.

5. Dr. Downing received a Dismissal and Notice of Rights on October 30, 2017, which was dated October 27, 2017.  A true and accurate copy of the Dismissal and Notice of Rights is attached hereto and marked as Exhibit 2.

6. This action was timely filed within ninety (90) days of receipt by Dr. Downing of the Dismissal and Notice of Rights.

## III.  JURISDICTION

7. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1367.

8. The ADA claim is authorized and instituted pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq*.

9. The retaliation claim is authorized and instituted pursuant to 29 U.S.C. § 623(d).

10. Jurisdiction to grant injunctive and declaratory equitable relief as well as to award damages is invoked pursuant to 42 U.S.C. § 12117.

11. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Indiana, Indianapolis Division.

## IV. VENUE

12. Dr. Downing is a resident of Marion County in the State of Indiana, and is a citizen of the United States of America.

13. The University of Indianapolis is a domestic nonprofit corporation located in Indianapolis, Marion County, Indiana.

14. The unlawful employment practices alleged herein arose in Marion County, Indiana. Marion County is located in the Southern District of Indiana.

15. Thus, this cause of action is properly venued in the Southern District of Indiana under 28 U.S.C. § 1391(b), which allows for an action to be brought in the district where the defendant resides or in which the cause of action arose.

## V. PLAINTIFF

16. Dr. Downing is a citizen of the United States, and is currently, as he was during all times relevant to this Complaint, a resident of Marion County in the State of Indiana.

17. Dr. Downing resides in Indianapolis, Indiana.

18. Dr. Downing is a person entitled to protection under the ADA based on his disability.

## VI. DEFENDANT

19. Defendant University of Indianapolis is a domestic nonprofit corporation with its principal place of business located at 1400 E. Hanna Ave., Esch Hall Room 134, Indianapolis, Indiana 46227.

20. At all times relevant to this action, the University of Indianapolis was the employer of Dr. Downing.

## VII.  STATEMENT OF FACTS

21.     Dr. Downing began working for the University of Indianapolis in 2002 as a professor of Clinical Psychology. He earned tenure in 2007.

22.     Dr. Downing is disabled due to enhanced physiologic tremors; lumbar and cervical radiculopathy and spondylosis; peripheral neuropathy; neural stenosis; carpal tunnel syndrome; sciatica, affecting left leg; insomnia; depression and anxiety related to chronic pain.

23.     Since the fall of 2015, Dr. Downing has experienced hostility from the University of Indianapolis relating to his disabilities, which escalated into a demotion, the imposition of an involuntary leave by the University of Indianapolis and a remediation plan.

24.     In the spring of 2015, the University of Indianapolis hired Anita Thomas as its new Dean of the School of Psychological Sciences, and she began working July 1, 2015.

25.     Although Dr. Downing's faculty evaluations have universally and historically met and exceeded expectations, Dean Thomas began claiming in the fall of 2015 that his medical conditions were interfering with his performance.

26.     Rather than engage in an interactive process to address Dr. Downing's disabilities as required by the ADA, Dean Thomas abruptly and immediately removed him as the Director of Graduate Programs in December of 2015. This occurred after she first notified Dr. Downing the week before that he would be removed from the position at the end of the academic year.

27.     The loss of the administrative position resulted in a significant loss of pay for Dr. Downing.

28.     While Dr. Downing again received an overall positive evaluation for that calendar year, Dean Thomas informed him on December 11, 2015 that she had allegedly received complaints about Dr. Downing.

29. Dean Thomas did not follow departmental or University policy in addressing these alleged complaints, accepted them uncritically and assumed they were true, without further investigation or inquiry or ever asking Dr. Downing about their validity.

30. Dr. Downing disputed the alleged complaints but did advise Dean Thomas that he had several serious health issues that he was dealing with, caused by his disabilities.

31. Again, Dean Thomas did not initiate an interactive process as required by the ADA.

32. Despite this, Dr. Downing provided Dean Thomas with documentation from his physician about his disabilities, and provided her with a list of reasonable accommodations he needed.

33. Dr. Downing did not receive any response to his request for accommodation, nor was he made aware of any additional complaints or concerns about performance.

34. Nonetheless, Dean Thomas sent him a certified letter on May 2, 2016 stating that "[his] performance remains unsatisfactory and there has been no indication of [his] willingness or ability to remedy [his] deficient job performance. As a result, [Dr. Downing was] placed on a leave of absence effective immediately."

35. The University of Indianapolis further demanded that Dr. Downing certify his fitness for duty before he returned to work.

36. Although the University ultimately agreed to return Dr. Downing to work in August 2016 after holding a meeting to discuss his reasonable accommodations requests and without requiring a fitness-for-duty certification, it unilaterally imposed new duties and marginalized him within the department.

37. Dean Thomas notified Dr. Downing for the first time in August 2016 that he was required to teach an additional graduate-level course, entirely new to him, beginning in little

5

more than a week's time. Each semester since that time, the University of Indianapolis has required Dr. Downing to teach courses that he has never taught before.

38. Dean Thomas also told Dr. Downing, for the first time, that the student evaluations from the Fall 2015 semester were unsatisfactory; as a result she placed him on a remediation plan without any written terms.

39. Dean Thomas also refused to allow Dr. Downing to participate in the curriculum committee – on which he could draw on his experience as the former Graduate Program Director and a committee he had chaired. Instead, she placed Dr. Downing on the diversity committee, but that committee effectively excluded him by not notifying him of its meetings.

40. Dean Thomas gave Dr. Downing a mediocre performance evaluation for 2016 and rated him as "Meets Expectations." In years past, Dr. Downing would have received "Exceeds Expectations" for the same performance.

41. Also, without advance notice or warning, Dean Thomas changed the rubric for evaluating the teaching portion of the evaluation. Thus, Dr. Downing was unaware until the evaluation that the criteria had changed.

42. Dr. Downing received this mediocre performance evaluation because of the University's demotion of Dr. Downing, unlawful imposition of an involuntary leave and its failure to accommodate his disabilities prior to imposing the leave, even though it clearly regarded him as disabled.

43. As a direct and proximate result of the foregoing conduct:

    (a) Dr. Downing incurred and continues to incur a substantial loss of past, present and future income;

    (b) Dr. Downing has lost the fringe benefits provided by University of Indianapolis;

    (c) Dr. Downing has suffered damage to his career;

    (d) Dr. Downing has suffered mental and physical anguish; and

    (e) Dr. Downing has incurred additional financial losses, including the costs associated with invoking his federally protected civil rights.

### VIII. STATEMENT OF CLAIMS

#### COUNT I

*(Discrimination under the Americans with Disabilities Act,*
*42 U.S.C. § 12101 et seq., as amended by the ADA Amendments Act of 2008.)*

44. Dr. Downing incorporates the allegations of paragraphs 1 through 43 above and, in addition, states that Defendant's acts and omissions in this matter discriminated against him because of his disability, his record of disability, and/or being regarded as having a disability in violation of the ADA.

45. Defendant is engaged in an industry affecting commerce.

46. Defendant has employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding year.

47. Defendant satisfies the definition of an "employer" within the meaning of Section 101 of the ADA, 42 U.S.C. § 12111(5)(a).

48. Dr. Downing at all times relevant herein had the requisite skill, experience, education and other job-related requirements of the position he held with Defendant.

49. Consequently, Dr. Downing is a qualified individual with a disability under 42 U.S.C. § 12111(8).

50. Dr. Downing is disabled within the meaning of the ADA; that is, he has a physical impairment, has a record of, and/or is regarded as having a physical impairment that substantially limits a major life activity.

51. At all times relevant herein, the University of Indianapolis was aware of Dr. Downing's disability and his need for reasonable accommodations.

52. The University of Indianapolis intentionally discriminated against Dr. Downing when it failed to provide reasonable accommodations.

53. Dr. Downing's disabilities were the motivating factor in University of Indianapolis's decision to demote Dr. Downing by removing him as the Director of Graduate Programs.

54. The University of Indianapolis's demotion of Dr. Downing's employment was a discriminatory action taken against him because of his disability in violation of the ADA.

55. The individual who replaced Dr. Downing in the performance of the Director of Graduate Program duties was less qualified and less experienced than Dr. Downing.

56. As a result of Defendant's discriminatory acts and omissions, Dr. Downing has suffered and will continue to suffer monetary damages and damages for mental anguish unless and until the Court grants relief.

### COUNT II
*(Retaliation Under the Americans with Disabilities Act)*

57. Dr. Downing incorporates the allegations of paragraphs 1 through 56 above, and, in addition, states that the University of Indianapolis retaliated against Dr. Downing following his complaints and requests for accommodation under the ADA.

58. Dr. Downing requested reasonable and customary accommodations in December of 2015 and again in August of 2016.

59. When the University of Indianapolis initially would not accommodate Dr. Downing's disability, he complained to his supervisor, Anita Thomas. Dr. Downing also complained to Human Resources; this was protected activity.

60. The University of Indianapolis made it very difficult for Dr. Downing to perform his job because it refused to reasonably accommodate his disability and instead imposed

unrealistic conditions upon his employment by placing him on a remediation plan and requiring him to teach courses he had never taught before with very little notice.

61. Because Dr. Downing requested reasonable accommodations under the ADA, the University of Indianapolis demoted him, significantly reducing his pay, imposed an involuntary medical leave on him, placed him on a remediation plan, and required him to teach courses he had never taught before on short notice; this was adverse action against Dr. Downing.

62. The University of Indianapolis retaliated against Dr. Downing when it took these adverse actions against him for exercising his ADA rights in violation of 42 U.S.C. § 12112(b)(5).

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff David L. Downing, PsyD, ABPP, prays for a judgment in his favor against the Defendant University of Indianapolis, and prays that the following relief be awarded:

(a) Grant a permanent injunction enjoining the University of Indianapolis, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in disability discrimination and any other employment practice, which discriminates on the basis of a disability, and from engaging in retaliation.

(b) Order the University of Indianapolis to make whole Dr. Downing by providing appropriate back pay and front pay for actual damages with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to Dr. Downing's pecuniary losses.

(c) Order the University of Indianapolis to make whole Dr. Downing by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

(d) Order the University of Indianapolis to make whole Dr. Downing by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices complained of above, including emotional pain, in amounts to be determined at trial.

  (e)  Order the University of Indianapolis to pay Dr. Downing punitive damages for its malicious and/or reckless conduct described above, in amounts to be determined at trial.

  (f)  Order the University of Indianapolis to pay Dr. Downing special damages, in amounts to be determined at trial.

  (g)  Order the University of Indianapolis to pay damages to Dr. Downing for any and all injuries to his career, in amounts to be determined at trial.

  (h)  Award Dr. Downing the costs of this action including reasonable attorneys' fees and any such further relief as the Court may deem just, proper and equitable.

  (i)  Grant such further relief as the Court deems necessary and proper in the public interest.

## X.   RESERVATION OF RIGHTS

Pursuant to the rules of pleading and practice, Plaintiff reserves the right to assert additional violations of federal and state law.

## XI.   JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

            Respectfully submitted,

            *s/ Sandra L. Blevins*
            Kevin W. Betz, Attorney No. 14188-82
            Sandra L. Blevins, Attorney No. 19646-49
            Courtney E. Endwright, Attorney No. 30557-49
            *Attorneys for Plaintiff David L. Downing, PsyD, ABPP*

BETZ + BLEVINS
One Indiana Square, Suite 1660
Indianapolis, Indiana 46204
Office: (317) 687-2222
Fax: (317) 687-2221
E-mail:  litigation@betzadvocates.com